**BUCHANAN INGERSOLL & ROONEY PC**
Andrew Hope, Esq. (NY Bar Id. 4913547).
Makenzie P. Leh, Esq. (*Pro Hac* Admission Forthcoming)
640 5th Avenue, 9th Floor
New York, New York 10019-6102
215 665 5322 (o)
Andrew.hope@bipc.com
Makenzie.leh@bipc.com
*Counsel for Trans Union, LLC*

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

CHASSIDY ADDISON                                      CASE NO.

       Plaintiff,

  vs.

VERIZON COMMUNICATIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., and TRANS UNION, LLC,

       Defendants.

---

### TRANS UNION, LLC'S NOTICE OF REMOVAL

---

Pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, Defendant Trans Union, LLC ("TransUnion") hereby removes the subject action from the Supreme Court of the State of New York, County of Bronx, to the United States District Court for the Southern District of New York on the following grounds:

1.    Plaintiff Chassidy Addison ("Adisson") is a natural person who resides in New York, Bronx County.

2.      Defendant TransUnion is a Delaware corporation with its principal place of business in Illinois.

## NATURE OF CASE

3.      On December 2, 2024, Addison commenced this action in the Supreme Court of the State of New York, County of Bronx, entitled *Chassidy Addison v. Verizon Communications, Inc.,* Index Number 817478/2024E via a Summons with Complaint (the "Complaint"). A true and correct copy of the Summons with Complaint is attached hereto as **Exhibit A**.

4.      On December 3, 2024, Addison served TransUnion with the Complaint. *See* id.  No other process, pleadings, or orders have been served on TransUnion.

5.      Knight makes claims under and alleges that TransUnion violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FCRA") and the New York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"). *See* Ex. A.

6.      This Court has original jurisdiction over the subject action pursuant to 28 U.S.C. § 1331 since there is a federal question.  As alleged, this suit falls within the FCRA which thus supplies this federal question.

7.      Pursuant to 28 U.S.C. § 1441, et seq., this cause may be removed from the Supreme Court of the State of New York, County of Bronx, to the United States District Court for the Southern District of New York.

8.      Removal is timely under 28 U.S.C. § 1446 because this Notice of Removal is filed within 30 days after TransUnion's receipt of a copy of the Complaint, filed in the Supreme Court of the State of New York, County of Bronx.

9.      Attached hereto as **Exhibit B** is a copy of TransUnion's Notice of Filing Notice of Removal to be filed in the Supreme Court of the State of New York, County of Bronx, Index Number 817478/2024E.

10.      The other Defendants, Verizon Communications, Inc., Equifax Information Services, LLC, and Experian Information Solutions, Inc., have all consented to the removal. Attached hereto as **Exhibit C** is a copy of the consent forms.

11.      Notice of this Removal will promptly be filed with the Supreme Court of the State of New York, County of Bronx and served upon all parties.

**WHEREFORE**, Defendant TransUnion, by counsel, removes the subject action from the Supreme Court of the State of New York, County of Bronx to this United States District Court, Southern District of New York.

Date:  January 2, 2025

**BUCHANAN INGERSOLL & ROONEY PC**


/s/ *Andrew G. Hope*_____
Andrew G. Hope (NY Bar ID No. 4913547)
640 5th Avenue, 9th Floor
New York, New York 10019-6102
215 665 5322 (o)
Andrew.hope@bipc.com

*Counsel for Trans Union, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2025, I caused a copy of the foregoing Notice of Removal to be electronically filed with the Clerk via CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing systems. Parties may access the filing through the Court's CM/ECF System and United States First Class mail.

Dated:  January 2, 2025                     */s/ Andrew G. Hope*

Andrew G. Hope

# EXHIBIT A

Case 1:25-cv-00025-RA    Document 1    Filed 01/02/25    Page 6 of 38

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF BRONX**

CHASSIDY ADDISON,

                *Plaintiff,*

     -against-

VERIZON COMMUNICATIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., and TRANS UNION, LLC,

                *Defendants.*

Index No.  817478/2024E

**COMPLAINT**

**JURY TRIAL DEMANDED**

       By and through the undersigned counsel, Plaintiff, Chassidy Addison ("Plaintiff"), with knowledge as to her own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that the allegations recited herein have substantial evidentiary support, states as follows:

<u>**Introduction**</u>

1.  Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"), Plaintiff brings this civil rights action against Defendants Verizon Communications, Inc. ("Verizon"), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") (together, Equifax, Experian, and Trans Union are the "CRA Defendants"), to recover actual, statutory, and punitive damages.  In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-shifting action.

2.  In 1970, Congress passed the FCRA and enshrined within it the "need to insure that consumer reporting agencies" like the CRA Defendants "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4).

3.  "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)." *Dep't. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024).

4.  The purpose of the FCRA is "to require that consumer reporting agencies" like the CRA Defendants "adopt reasonable procedures for [reporting information] in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information . . . ." Section 1681(b) (emphasis added). *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (observing that the purpose of the FCRA is to address the "serious problem in the credit reporting industry . . . of inaccurate or misleading information"); *Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (stating that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . .") (citing 116 Cong. Rec. 36572 (1970)).

5.  The public policy objectives underlying the FCRA remain relevant and compelling today as ever. As recently as October 2022, Congress recognized the CRA Defendants' continued systemic "failures to efficiently respond to and resolve credit reporting inaccuracies raised by consumers."[1]

---

[1] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to*

6. The bipartisan subcommittee's investigation found "longstanding problems with" the CRA Defendants' "practices for responding to consumers who challenge credit report errors."

7. For example, the investigation found that the CRA Defendants "disregard millions of disputes each year without investigation" based on "speculative or overly broad criteria," in a manner "contrary to the FCRA."

8. Evidence further suggested that the CRA Defendants "may not be allocating enough staff to adequately investigate disputes."

9. The CRA Defendants' policies and procedures to avoid inaccuracies are so insufficient that they often fail to identify and remove even "facially false data," including entries that are "logically inconsistent" or "impossible."[2]

10. The congressional subcommittee found that the CRA Defendants "have attempted to shift the responsibility–and blame–for the accuracy of consumer report data onto data furnishers."[3] Instead of fulfilling their independent investigatory duties under the FCRA, the CRA Defendants "engage in 'parroting,' a practice of blindly adopting the response of a data furnisher without conducting any independent investigation."

11. As recently as April 8, 2024, the CFPB acknowledged "continuing accuracy problems in the credit reporting system," specifically finding that the CRA Defendants "failed to ensure the accuracy of credit reports, including by failing to exclude information resulting from alleged identity theft."[4]

---

*Address Errors in Consumer Credit Reports, Press Release*, 117th Congress (Oct. 14, 2022), https://coronavirus.house.gov/news/press-releases/clyburn-cfpb-chopra-equifax-experian-transunion.
[2] *See generally Advisory Opinion on Fair Credit Reporting; Facially False Data*, Bureau of Consumer Financial Protection, 12 CFR Part 1022 (October 20, 2022).
[3] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 5, 117th Congress (Oct. 13, 2022), https://coronavirus-democrats-oversight.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.
[4] *CFPB Finds Violations of Credit Report Accuracy Requirements, Including for Survivors of Human Trafficking, Press Release*, April 8, 2024.

Page **3** of 27

12. The federal agency found that consumer reporting companies such as the CRA Defendants systematically violated their FCRA obligations to identity theft victims such as Plaintiff, especially their obligation to block the reporting of disputed information, as occurred in this case.[5] Moreover, as of 2024, the CFPB is continuing to seek repercussions against Defendant Trans Union on account of the fact that Trans Union "misled millions of consumers" with respect to services related to credit reporting. *See Consumer Financial Protection Bureau v. Transunion, LLC, et al.,* No. 22 Cv 1880, 2024 Wl 3888863, at *1 (N.D. Ill. Aug. 20, 2024) (denying Trans Union's motion to dismiss).

13. Plaintiff's experience typifies Congress's findings. A victim of identity theft, Plaintiff disputed the false Verizon Wireless collections account (the "False Verizon Account") on her credit reports. In response, the CRA Defendants conducted perfunctory, willfully ignorant investigations of her disputes. Each defendant thereby willfully violated the FCRA, denying Plaintiff's rights under that statute.

14. Congress's findings echo what juries and courts have long found in individual cases regarding damages: FCRA violations can have "serious, long-term consequences for consumers, such as blocking access to permanent housing or preventing small businesses from obtaining much-needed lines of credit."[6] Consumers like Plaintiff "are experiencing no small measure of stress, frustration, and financial hardship as a result of [the] failure to correct legitimate errors on their credit reports."[7] As recounted below, Plaintiff suffered

---

[5] The "companies refused to honor consumer requests to block information associated with identity theft based on overbroad criteria; failed to inform consumers when blocks were denied or rescinded; [and] failed to provide victims of identity theft with summaries of rights." *Id.*
[6] *Select Subcommittee Launches Investigation Into Credit Reporting Failures During Pandemic, Press Release*, 117th Congress (May 25, 2022).
[7] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 7, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.

Page **4** of 27

extensively as a result of the CRA Defendants' violations of her consumer rights under the FCRA.

## Plaintiff's Rights as an Identity Theft Victim

15. Plaintiff has a right to an unencumbered identity.[8]

16. Plaintiff's identity was encumbered by each Defendant's actions.

17. Plaintiff has a right to be notified if Plaintiff's identity credentials or data are compromised, used, or misused.

18. Plaintiff's identity was compromised and/or misused due to the actions of each Defendant.

19. Plaintiff has a right to remediate/recover Plaintiff's identity without undue burden, financial or otherwise.

20. Each Defendant caused Plaintiff undue burden, financial and otherwise, in Plaintiff's attempts to remediate/recover Plaintiff's identity.

21. Plaintiff has a right to be acknowledged as a victim of crime.

22. Despite Plaintiff's repeated disputes about identity theft, each Defendant failed to acknowledge Plaintiff as a victim of a crime.

23. Each Defendant, by refusing to comply with the FCRA, impeded Plaintiff's efforts to recover Plaintiff's identity.

---

[8] *Foundations of Identity*, Identity Theft Resource Center (accessed November 7, 2024), https://www.idtheftcenter.org/about-us/ (listing Experian as a "financial supporter").

## Summary of Plaintiff's Claims Against Defendants Pursuant to
## the Fair Credit Reporting Act and/or New York Fair Credit Reporting Act

*Summary of Plaintiff's Claims Against Defendant Verizon Pursuant to the FCRA*

24. Based on acts and omissions described more fully below in the Statement of Facts, Verizon is liable to Plaintiff for violations of FCRA 15 U.S.C. § 1681s-2(b) by its actions and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes of the Verizon account reporting on Plaintiff's credit reports after Verizon received notice of Plaintiff's disputes from consumer reporting agencies;

   b. failing to review all relevant information provided to Verizon by consumer reporting agencies, or otherwise in the possession of Verizon, concerning Plaintiff's disputes of the fraudulent Verizon account, including but not limited to the items of information listed in ¶ 29 below; and

   c. failing to promptly modify, delete, or permanently block any and all information about the disputed Verizon account that Verizon, had it conducted reasonable investigations of Plaintiff's disputes, could not have affirmatively verified as accurate.

25. As a direct and proximate result of Verizon's violations of the FCRA, recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

*Violations of FCRA § 1681e(b) and NY FCRA § 380-j*

26. The CRA Defendants violated FCRA § 1681e(b) when they failed to maintain reasonable procedures to assure the maximum possible accuracy when they prepared and published multiple consumer reports about Plaintiff to third-parties.

27. The CRA Defendants violated New York General Business Law ("NY FCRA") § 380-j by preparing and publishing inaccurate consumer reports about Plaintiff to third parties. Those consumer reports contained inaccurate information about Plaintiff, including but not necessarily limited to the False Verizon Account, which the CRA Defendants knew or had reason to know was inaccurate.

28. Upon information and belief, the CRA Defendants violated NY FCRA § 380-j (a) (3) by *maintaining in* and reporting from the credit files they maintained about Plaintiff information they had reason to know was inaccurate, including but not necessarily limited to the False Verizon Account, which, in fact, resulted from the theft of Plaintiff's identity.

*Violations of FCRA § 1681i and NY FCRA § 380-f*

29. The CRA Defendants violated FCRA § 1681i(a)(1) and NY FCRA § 380-f(a) by failing to conduct a reasonable reinvestigation of the False Verizon Account after Plaintiff disputed its accuracy to determine whether it was accurately reporting. A reasonable investigation should have included, and the CRA Defendants' investigations did not include or give appropriate weight to, the following items of information included in Plaintiff's disputes:

   a. Plaintiff's Federal Trade Commission ("FTC") Identity Theft Report;

   b. Plaintiff's dispute letter(s) and the allegations therein;

   c. "Red Flags" data (as the term is defined by the FTC Red Flags Rule, 12 C.F.R. §§ 41.90-92, 222.90-91, 334.90-91, 364.100-01, 717.90-91, and 16 C.F.R. § 681.1-2); and

   d. all other information included in Plaintiff's disputes and interactions with each CRA Defendant as detailed below.

Case 1:25-cv-00025-RA    Document 1    Filed 01/02/25    Page 13 of 38

30. Upon information and belief, the CRA Defendants violated FCRA § 1681i(a)(4) by failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes of the False Verizon Account, including but not limited to the items mentioned in the previous paragraph.

31. The CRA Defendants violated FCRA § 1681i(a)(5) and NY FCRA § 380-f(b)(1) by failing to promptly delete the disputed False Verizon Account from their credit files for Plaintiff despite the fact that the CRA Defendants, had they conducted reasonable reinvestigations of Plaintiff's disputes, could not have verified that the disputed information was accurate.

32. The CRA Defendants violated FCRA §§ 1681i(c) and (b) by failing to clearly note the information in question was disputed by Plaintiff or to provide a clear and accurate codification or summary of Plaintiff's statement of dispute of the False Verizon Account in all consumer reports that the CRA Defendants reported after Plaintiff submitted a statement of dispute.

33. The CRA Defendants violated NY FCRA §§ 380-f(c)(1)-(4) by failing to include Plaintiff's statement of dispute or a clear and accurate codification or summary thereof in all consumer reports containing the False Verizon Account that the CRA Defendants published after concluding their respective reinvestigations of Plaintiff's disputes.

34. The CRA Defendants violated FCRA § 1681i(c) by failing to clearly note that Plaintiff disputed the False Verizon Account in each consumer report the CRA Defendants published subsequent to Plaintiff submitting a statement of dispute to the CRA Defendants.

35. The CRA Defendants violated NY FCRA § 380f(c)(4) by failing to clearly note that Plaintiff disputed the False Verizon Account in each consumer report that the CRA Defendants published after concluding its reinvestigations of Plaintiff's disputes.

36. The CRA Defendants violated 15 U.S.C. § 1681c-2 by failing to block the reporting of
information in Plaintiff's file that Plaintiff identified as having resulted from identity theft.

37. As a direct and proximate result of the CRA Defendants' violations of the FCRA and NY
FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual
damages.

## Jurisdiction and Venue

38. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p). Venue is proper in this
Court pursuant to 28 U.S.C. § 1391(b)(2).

39. Venue is proper in this Court under New York Civil Practice Law and Rules ("CPLR") § 503
because Plaintiff resides in Bronx County.

## The Parties

40. Plaintiff Chassidy Addison is an individual and "consumer" within the meaning of the FCRA
(15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides in The Bronx,
New York.

41. Defendant Verizon Communications, Inc., is a corporation that conducts business in the State
of New York and is a "furnisher of information" within the meaning of the FCRA. 12 CFR §
1022.41(c).

42. Defendant Equifax Information Services, LLC, is a Georgia limited liability company, duly
authorized and qualified to do business in the State of New York, and is a "consumer
reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY
FCRA (G.B.L. § 380-a(e)).

43. Defendant Experian Information Solutions, Inc., is an Ohio corporation, duly authorized and
qualified to do business in the State of New York, and is a "consumer reporting agency"

within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

44. Defendant Trans Union, LLC, is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## Statement of Facts

*Plaintiff's Credit Reports*

45. Plaintiff, Chassidy Addison ("Plaintiff"), is a victim of identity theft.

46. The CRA Defendants each reported, from at least May 2022 through June 2024, the False Verizon Account on Plaintiff's credit reports.

47. Plaintiff has never had a Verizon Wireless Account.

48. Plaintiff has never been a customer of Verizon Wireless.

49. The False Verizon Account was a collections account with a delinquent balance of $125.00.

*Plaintiff's FTC Affidavit*

50. In response to her discovery of the False Verizon Account, Plaintiff filed an Identity Theft Report with the Federal Trade Commission (the "FTC Affidavit") on November 25, 2022.

51. The FTC Affidavit noted that "[V]erizon states that no such account ever [existed] using my social security number nor were services ever rendered in my name but [Verizon has] still refused to remove this item from my credit."

52. The FTC Affidavit identified the False Verizon Account by its Account Number.

53. The FTC Affidavit also indicated that the total fraudulent amount of the balance was $125.00.

54. The FTC Affidavit further stated that the False Verizon Account and the fraudulent charges appeared on Plaintiff's credit reports.

*Plaintiff's Initial Dispute with Trans Union in 2022*

55. In December 2022, Plaintiff sent Trans Union an initial dispute letter.

56. The initial dispute letter was sent to Trans Union via certified mail.

57. In the initial dispute letter, Plaintiff disputed the False Verizon Account that Trans Union was then reporting about her.

58. Plaintiff stated plainly in the initial dispute letter that the account was inaccurate and that she suspected identity theft.

59. Plaintiff also included with her initial dispute letter her Social Security number, copies of her driver's license and Social Security card, and the FTC Affidavit.

60. Plaintiff requested in the initial dispute letter that the inaccurate collection account be deleted.

61. Alternatively, Plaintiff requested that Trans Union add the following statement of dispute to her file: "Consumer disputes this item.  Consumer maintains she has never had a Verizon account.  Consumer suspects Identity Theft."

62. The FTC Affidavit, which was included with the initial dispute letter, provided Plaintiff's phone number and email address available for any follow-up communications as a part of Trans Union's investigation.

63. Plaintiff's initial dispute letter required Trans Union to block the disputed account within four days and to reinvestigate the disputed account.

64. Trans Union received Plaintiff's initial dispute letter no later than December 29, 2022.

65. Plaintiff has no record of being sent the results of Trans Union's investigation of her initial dispute letter.

66. Trans Union never called Plaintiff as part of its investigation.

67. Trans Union never sent Plaintiff any probative emails as part of its investigation.

68. The False Verizon Account continued to report on Plaintiff's Trans Union credit report.

69. Trans Union either verified the account or, alternatively, simply ignored Plaintiff's dispute.

70. Plaintiff received no communication from Trans Union stating that Trans Union had blocked the account.

71. Upon information and belief, Trans Union failed to respond to the dispute of the account, as Plaintiff has no record of dispute results at all.

72. In the alternative, Trans Union failed to conduct a reasonable reinvestigation of the False Verizon Account.

73. Trans Union also failed to add Plaintiff's consumer statement to Plaintiff's file.

*Plaintiff's Initial Dispute with Equifax in 2022*

74. In December 2022, Plaintiff sent Equifax an initial dispute letter.

75. The initial dispute letter was sent to Equifax via certified mail.

76. In the initial dispute letter, Plaintiff disputed the False Verizon Account that Equifax was then reporting about her.

77. Plaintiff stated plainly in the initial dispute letter that the account was inaccurate and that she suspected identity theft.

78. Plaintiff also included with her initial dispute letter her Social Security number, copies of her driver's license and Social Security card, and the FTC Affidavit.

Page **12** of 27

79. Plaintiff requested in the initial dispute letter that the inaccurate collection account be deleted.

80. Alternatively, Plaintiff requested that Equifax add the following statement of dispute to her file: "Consumer disputes this item. Consumer maintains she has never had a Verizon account. Consumer suspects Identity Theft."

81. The FTC Affidavit, which was included with the initial dispute letter, provided Plaintiff's phone number and email address available for any follow-up communications as a part of Equifax's investigation.

82. Plaintiff's initial dispute letter required Equifax to block the disputed account within four days and to reinvestigate the disputed account.

83. Upon information and belief, Equifax received Plaintiff's initial dispute letter in or around December 2022.

84. Plaintiff has no record of being sent the results of Equifax's investigation of her initial dispute letter.

85. Equifax never called Plaintiff as part of its investigation.

86. Equifax never sent Plaintiff any probative emails as part of its investigation.

87. The False Verizon Account continued to report on Plaintiff's Equifax credit report.

88. Equifax either verified the account or, alternatively, simply ignored Plaintiff's dispute.

89. Plaintiff received no communication from Equifax stating that Equifax had blocked the account.

90. Upon information and belief, Equifax also failed to respond to the dispute of the account, as Plaintiff has no record of dispute results at all.

91. In the alternative, Equifax failed to conduct a reasonable reinvestigation of the False Verizon Account.

92. Equifax also failed to add Plaintiff's consumer statement to Plaintiff's file.

*Plaintiff's Initial Dispute with Experian in 2022*

93. In December 2022, Plaintiff sent Experian an initial dispute letter.

94. The initial dispute letter was sent to Experian via certified mail.

95. In the initial dispute letter, Plaintiff disputed the False Verizon Account that Experian was then reporting about her.

96. Plaintiff stated plainly in the initial dispute letter that the account was inaccurate and that she suspected identity theft.

97. Plaintiff also included with her initial dispute letter her Social Security number, copies of her driver's license and Social Security card, and the FTC Affidavit.

98. Plaintiff requested in the initial dispute letter that the inaccurate collection account be deleted.

99. Alternatively, Plaintiff requested that Experian add the following statement of dispute to her file: "Consumer disputes this item. Consumer maintains she has never had a Verizon account. Consumer suspects Identity Theft."

100. The FTC Affidavit, which was included with the initial dispute letter, provided Plaintiff's phone number and email address available for any follow-up communications as a part of Experian's investigation.

101. Plaintiff's initial dispute letter required Experian to block the disputed account within four days and to reinvestigate the disputed account.

102. Experian received Plaintiff's initial dispute letter on December 27, 2022.

103.    Experian never called Plaintiff as part of its investigation.

104.    Experian never sent Plaintiff any probative emails as part of its investigation.

105.    On December 28, 2022, Experian sent an email to Plaintiff, which stated that Experian had declined Plaintiff's request to block the False Verizon Account.

106.    On January 13, 2023, Experian purported to verify the accuracy of the False Verizon Account.

107.    Experian thus failed to conduct a reasonable reinvestigation of the False Verizon Account.

108.    Experian also failed to add Plaintiff's consumer statement to Plaintiff's file.

*Verizon's Notice of Plaintiff's Initial Dispute*

109.    Upon information and belief, Verizon received notice of Plaintiff's initial dispute from at least one credit reporting agency in or around December of 2022.

110.    In fact, on December 28, 2022, Experian sent an email to Plaintiff, which stated that Experian had "conveyed [Plaintiff's] dispute to the furnisher(s) of the information directly."

111.    Notwithstanding that Verizon had received notice of Plaintiff's initial dispute, the False Verizon Account continued to report on Plaintiff's credit reports.

112.    Accordingly, upon information and belief, Verizon failed to conduct a reasonable investigation of the disputed Verizon Account and verified its accuracy to at least one credit reporting agency, namely, Experian.

*Plaintiff's Second Dispute with Trans Union in 2024*

113.    In June 2024, Plaintiff sent Trans Union her second dispute letter.

Case 1:25-cv-00025-RA    Document 1    Filed 01/02/25    Page 21 of 38

114.  The second dispute letter was sent via certified mail.

115.  In the second dispute letter, Plaintiff again disputed the False Verizon Account that Trans Union was then reporting about her.

116.  Plaintiff again stated in the second dispute letter that the account was inaccurate and that she suspected identity theft.

117.  Plaintiff again included with her second dispute letter her Social Security number, copies of her driver's license and Social Security card, and the FTC Affidavit.

118.  Plaintiff again requested in the second dispute letter that the inaccurate account be deleted.

119.  Alternatively, Plaintiff requested that Trans Union add a statement of dispute to her file, in which she stated that she disputed the False Verizon Account, that the account was the result of identity theft, that she never even had a Verizon account, and that she had never been a customer of Verizon.

120.  The FTC Affidavit and the second dispute letter provided Plaintiff's phone number and email address available for any follow-up communications as a part of Trans Union's investigation.

121.  Plaintiff's second dispute letter required Trans Union to block the disputed account within four days and to reinvestigate the disputed account.

122.  Trans Union received Plaintiff's second dispute letter no later than June 15, 2024.

123.  Trans Union never called Plaintiff as part of its investigation.

124.  Trans Union never sent Plaintiff any probative emails as part of its investigation.

125.  On June 15, 2024, Trans Union finally deleted the False Verizon Account from Plaintiff's credit report.

*Plaintiff's Second Dispute with Equifax in 2024*

126.    In June 2024, Plaintiff sent Equifax her second dispute letter.

127.    The second dispute letter was sent via certified mail.

128.    In the second dispute letter, Plaintiff again disputed the False Verizon Account that

Equifax was then reporting about her.

129.    Plaintiff again stated in the second dispute letter that the account was inaccurate and that

she suspected identity theft.

130.    Plaintiff again included with her second dispute letter her Social Security number, copies

of her driver's license and Social Security card, and the FTC Affidavit.

131.    Plaintiff again requested in the second dispute letter that the inaccurate account be

deleted.

132.    Alternatively, Plaintiff requested that Equifax add a statement of dispute to her file, in

which she stated that she disputed the False Verizon Account, that the account was the result

of identity theft, that she never even had a Verizon account, and that she had never been a

customer of Verizon.

133.    The FTC Affidavit and the second dispute letter provided Plaintiff's phone number and

email address available for any follow-up communications as a part of Equifax's

investigation.

134.    Plaintiff's second dispute letter required Equifax to block the disputed account within

four days and to reinvestigate the disputed account.

135.    Equifax received Plaintiff's Second Dispute Letter no later than June 19, 2024.

136.    Equifax never called Plaintiff as part of its investigation.

137.    Equifax never sent Plaintiff any probative emails as part of its investigation.

Case 1:25-cv-00025-RA   Document 1   Filed 01/02/25   Page 23 of 38

138.   On June 19, 2024, Equifax refused to block the False Verizon Account.

139.   Upon information and belief, Equifax finally deleted the False Verizon Account from

Plaintiff's credit report on July 11, 2024.

*Plaintiff's Second Dispute with Experian in 2024*

140.   In June 2024, Plaintiff sent Experian her second dispute letter.

141.   The second dispute letter was sent via certified mail.

142.   In the second dispute letter, Plaintiff again disputed the False Verizon Account that

Experian was then reporting about her.

143.   Plaintiff again stated in the second dispute letter that the account was inaccurate and that

she suspected identity theft.

144.   Plaintiff again included with her second dispute letter her Social Security number, copies

of her driver's license and Social Security card, and the FTC Affidavit.

145.   Plaintiff again requested in the second dispute letter that the inaccurate account be

deleted.

146.   Alternatively, Plaintiff requested that Experian add a statement of dispute to her file, in

which she stated that she disputed the False Verizon Account, that the account was the result

of identity theft, that she never even had a Verizon account, and that she had never been a

customer of Verizon.

147.   The FTC Affidavit and the second dispute letter provided Plaintiff's phone number and

email address available for any follow-up communications as a part of Experian's

investigation.

148.   Plaintiff's second dispute letter required Experian to block the disputed account within

four days and to reinvestigate the disputed account.

149.    Experian received Plaintiff's second dispute letter no later than June 11, 2024.

150.    Experian never called Plaintiff as part of its investigation.

151.    Experian never sent Plaintiff any probative emails as part of its investigation.

152.    On June 11, 2024, Experian finally deleted the False Verizon Account from Plaintiff's credit report.

*Damages from Trans Union's Reporting*

153.    Trans Union published the falsely verified account no fewer than five times to no fewer than five parties.

154.    On or before February 27, 2023, Plaintiff applied to Barclays for a Navyist Rewards Credit Card, and Barclays accessed Plaintiff's Trans Union credit report.

155.    Plaintiff's Barclays application was denied.

156.    Although Barclays' denial of Plaintiff's application was attributed to Plaintiff's Experian credit report, Plaintiff's Trans Union credit report showed that Barclays also conducted a hard inquiry of Plaintiff's Trans Union credit report.

157.    As a reason for the denial, Barclays cited "[t]oo few accounts with sufficient satisfactory performance."

158.    As a result of the denial, Plaintiff was not able to obtain a credit card from Barclays and suffered actual damages including pecuniary and non-pecuniary harm.

159.    On or before April 3, 2023, Plaintiff applied to Apple Card  / Goldman Sachs Bank USA ("Apple Card") for a credit card.

160.     Plaintiff's Apple Card application was denied.

161.    The denial of the Apple Card application was attributed to, among other things, a serious delinquency on Plaintiff's Trans Union credit report.

162.    As a result of this denial, Plaintiff was not able to obtain a credit card from Apple Card
and suffered actual damages including pecuniary and non-pecuniary harm.

163.    On or around September 17, 2023, Plaintiff applied for a Destiny Mastercard Account
("Destiny") issued by First Electronic Bank.

164.    Plaintiff's Destiny application was denied on the ground that, among other things, the
"[n]ewest delinquent or derogatory payment status on [Plaintiff's] accounts is too recent."

165.    The denial of Plaintiff's Destiny application was based on a review of Plaintiff's Trans
Union report.

166.    As a result of the denial of Plaintiff's Destiny application, Plaintiff was not able to obtain
a credit card from Destiny and suffered actual damages including pecuniary and
non-pecuniary harm.

167.    On or around October 27, 2023, Plaintiff submitted a credit application for a vehicle with
JPMorgan Chase Bank, N.A.

168.    Plaintiff's credit application for a vehicle was denied based on, among other things,
insufficient satisfactory credit as indicated in Plaintiff's Trans Union credit report, an issue
caused directly by the false reporting.

169.    On or around November 26, 2023, Plaintiff applied for a credit product with Walgreens
that is issued by Synchrony Bank.

170.    Synchrony Bank denied Plaintiff's application based on, among other things, a "[l]ack of
recently reported accounts" as indicated in Plaintiff's Trans Union credit report, an issue
caused directly by the false reporting.

*Damages from Equifax's Reporting*

171.    Equifax published the false account no fewer than four times to no fewer than three parties.

172.    On or before April 3, 2023, Plaintiff applied to Target for a RedCard credit card.

173.    Plaintiff's application for a RedCard credit card was denied.

174.    The denial of Plaintiff's application for a RedCard credit card was attributed to, among other things, a serious delinquency on her Equifax credit report.

175.    As a result of the denial of Plaintiff's application for a RedCard credit card, Plaintiff was not able to obtain a credit card from Target and suffered actual damages including pecuniary and non-pecuniary harm.

176.    On or around August 25, 2023, Plaintiff again applied to Target for a RedCard credit card.

177.    Plaintiff's second application for a RedCard credit card was denied.

178.    Upon information and belief, the denial of Plaintiff's second application for a RedCard credit card was attributed to, among other things, a serious delinquency on her Equifax credit report.

179.    As a result of the denial of Plaintiff's second application for a RedCard credit card, Plaintiff was not able to obtain a credit card from Target and suffered actual damages including pecuniary and non-pecuniary harm.

180.    On or around September 18, 2023, Plaintiff applied to Capital One for a consumer credit card and was denied on the basis of, among other things, "insufficient credit card account experience."  This was an issue caused by the false reporting.

181.    The denial of Plaintiff's Capital One application was based on a review of her credit reports "from one or more of" the CRA Defendants.

182.    The denial of Plaintiff's Capital One application was also based on a review of Plaintiff's credit score, which Capital One obtained from Equifax.

183.    Capital One's notice of the denial of Plaintiff's application indicated that Plaintiff's credit score reflected, among other things, a "[s]erious delinquency."

184.    On or around October 21, 2023, Plaintiff applied for The Home Depot Consumer Credit Card.

185.    Plaintiff's application for The Home Depot Consumer Credit Card was denied based on, among other things, a "[s]erious delinquency" in Plaintiff's Equifax credit report.

*Damages from Experian's Reporting*

186.    Experian published the false account no fewer than five times to no fewer than five parties.

187.    On or before May 18, 2023, Plaintiff applied to Wells Fargo Bank, N.A., for a Choice Privileges Mastercard.

188.    Plaintiff's application for a Choice Privileges Mastercard was denied on May 18, 2023.

189.    The denial of Plaintiff's application for a Choice Privileges Mastercard was attributed to, among other things, a "[s]erious delinquency" on Plaintiff's Experian credit report.

190.    As a result of this denial, Plaintiff was not able to obtain a Choice Privileges Mastercard, and she consequently suffered actual damages including pecuniary and non-pecuniary harm.

191.    On or around August 25, 2023, Plaintiff applied for and was denied a Priceline VIP Rewards Visa Card from Barclays on the basis of "[too few accounts with sufficient satisfactory performance" on her Experian report, an issue caused by the false reporting.

192.     On or around August 25, 2023, Plaintiff applied for credit from LendingClub Bank and

was denied on the basis of her Experian report.

193.     The denial of Plaintiff's application for credit from LendingClub Bank was attributed to,

among other things, an account that was "past due" on her Experian credit report.

194.     As a result of the denial of Plaintiff's application for credit from LendingClub, Plaintiff

was not able to obtain credit from LendingClub.  She consequently suffered actual damages

including pecuniary and non-pecuniary harm.

195.     On or around August 28, 2023, Plaintiff applied for and was denied a Macy's American

Express Card and a Macy's Credit Card on the basis of "[i]nsufficient credit experience" as

indicated on her Experian report, an issue caused directly by the false reporting.

196.     On or around October 18, 2023, Plaintiff applied for a Burlington Account with

Comenity Capital Bank.

197.     Plaintiff's application for a Burlington Account was denied based on, among other things,

a "[l]ack of recently reported accounts" as indicated in Plaintiff's Experian credit report, an

issue caused directly by the false reporting.

*Damages - General*

198.     At all times pertinent hereto, the conduct of the CRA Defendants as well as their

respective agents, servants and/or employees, was malicious, intentional, willful, reckless,

negligent and in wanton disregard for the rights of Plaintiff pursuant to the FCRA and/or NY

FCRA.

199.     As a direct and proximate result of the willful and negligent actions, conduct, and

omissions of the CRA Defendants, Plaintiff suffered cognizable actual damages, including

but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FCRA BY DEFENDANT VERIZON

200.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

201.    Based on the facts alleged in this Complaint, Defendant Verizon violated FCRA § 1681s-2(b) by its acts and omissions.

202.    Due to these violations of § 1681s-2(b) by Defendant Verizon, Plaintiff suffered actual damages, including but not limited to damage to her reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

203.    These violations of § 1681s-2(b)(1) were willful, rendering Defendant Verizon liable for actual damages, statutory damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

204.    In the alternative, Defendant Verizon was negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1681o.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE FCRA BY THE CRA DEFENDANTS
## (CONSUMER REPORTING AGENCIES)

205.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

206.    Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the FCRA including but not necessarily limited to the following violations:

Page **24** of **27**

    a.  The CRA Defendants each violated 15 U.S.C. § 1681c-2;

    b.  The CRA Defendants each violated 15 U.S.C. § 1681e(b);

    c.  The CRA Defendants each violated 15 U.S.C. § 1681i(a)(1);

    d.  The CRA Defendants each violated 15 U.S.C. § 1681i(a)(4);

    e.  The CRA Defendants each violated 15 U.S.C. § 1681i(a)(5);

    f.  The CRA Defendants each violated 15 U.S.C. § 1681i(b); and

    g.  The CRA Defendants each violated 15 U.S.C. § 1681i(c).

207.    Due to the separate and independent violations of the FCRA by the CRA Defendants, Plaintiff suffered actual damages, including but not limited to damage to Plaintiff's reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

208.    These violations by the CRA Defendants of §§ 1681c-2, 1681e, and 1681i were willful, rendering the CRA Defendants liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

209.    In the alternative, these FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

## THIRD CAUSE OF ACTION
### VIOLATIONS OF THE NY FCRA BY THE CRA DEFENDANTS
### (CONSUMER REPORTING AGENCIES)

210.    Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

211.    Based on the facts alleged in this Complaint, the CRA Defendants, by their respective

actions and omissions, each independently violated various provisions of the NY FCRA (NY

GBL §§ 380-380-u) including, but not necessarily limited to, the following violations:

    a.   The CRA Defendants each violated § 380-j(a);

    b.   The CRA Defendants each violated § 380-j(e);

    c.   The CRA Defendants each violated § 380-f(a);

    d.   The CRA Defendants each violated § 380-f(c)(1);

    e.   The CRA Defendants each violated § 380-f(c)(2);

    f.   The CRA Defendants each violated § 380-f(c)(3); and

    g.   The CRA Defendants each violated § 380f(c)(4).

212.   These violations by the CRA Defendants of NY FCRA §§ 380-j and 380-f were willful,

rendering the CRA Defendants liable for actual damages, costs and reasonable attorney's

fees, and punitive damages in an amount to be determined by the Court pursuant to NY

FCRA § 380-l.

213.   In the alternative, these NY FCRA violations by the CRA Defendants were negligent,

entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to

NY FCRA § 380-m.

214.   Plaintiff is also entitled to injunctive relief restraining the CRA Defendants from any

further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable

relief against Defendants:

1.   Awarding against each Defendant actual damages, statutory damages, punitive damages,

costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as,

with respect to the CRA Defendants, NY GBL § 380-l and § 380-m;

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

| | |
|---|---|
| CHASSIDY ADDISON,<br><br>        Plaintiff,<br><br>   vs.<br><br>VERIZON COMMUNICATIONS, INC.,<br>EQUIFAX INFORMATION SERVICES,<br>LLC, EXPERIAN INFORMATION<br>SOLUTIONS, INC., and TRANS UNION,<br>LLC,<br><br>       Defendants. | Index No. 817478/2024E |

## NOTICE OF FILING NOTICE OF REMOVAL
## WITH THE UNITED STATES DISTRICT COURT

Please take notice that Defendant Trans Union, LLC has filed the attached Notice of Removal with the Clerk of the United States District Court for the Southern District of New York on January 2, 2025.  A true and correct copy of the Notice of Removal filed with the United States District Court Southern District of New York is attached hereto as **Exhibit A**.

Date:  January 2, 2025

**BUCHANAN INGERSOLL & ROONEY PC**

/s/ *Andrew G. Hope*_____
Andrew G. Hope (NY Bar ID No. 4913547)
640 5th Avenue, 9th Floor
New York, New York 10019-6102
215 665 5322 (o)
Andrew.hope@bipc.com

*Counsel for Trans Union, LLC*

### <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on this 2nd day of January 2025, I caused a copy of the foregoing Notice of Filing Notice of Removal to be electronically filed with the Clerk via CM/ECF.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing systems. Parties may access the filing through the Court's CM/ECF System.

Dated:  January 2, 2025                 */s/ Andrew G. Hope*____

                                           Andrew G. Hope

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CHASSIDY ADDISON                          CASE NO.

        Plaintiff,

vs.

VERIZON COMMUNICATIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., and TRANS UNION, LLC,

        Defendants.

### DEFENDANT EQUIFAX INFORMATION SERVICES' CONSENT TO REMOVAL

Without waiving any of its defenses or other rights, Defendant Equifax Information

Services, LLC, hereby acknowledges its consent to the removal of this action from the Supreme

Court of the State of New York, County of Bronx to the Southern District of New York.

Dated: 12/18/24

Adam T. Hill. Esquire
Seyfarth Shaw LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606-6448
ahill@seyfarth.com

Equifax
~~Experian~~

*Counsel    for    Defendant,*
*Information Services, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHASSIDY ADDISON, | CASE NO.: |
| *Plaintiff,* | |
| -*against*- | |
| VERIZON COMMUNICATIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC, | |
| *Defendants.* | |

<u>**NOTICE OF CONSENT TO REMOVAL BY DEFENDANT**</u>
<u>**CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS**</u>
<u>(*erroneously sued as "Verizon Communications, Inc.")*,</u>

PLEASE TAKE NOTICE that without waiving any of its defenses or other rights,

Defendant CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS (*erroneously sued as*

"Verizon Communications, Inc."), by and through the undersigned attorney, hereby

consents to the removal of this action from the Supreme Court of the State of New York,

County of Bronx  to the United States District Court for the Southern District of New York.

Dated: December 20, 2024

Yours, etc.

_____
Howard A. Fried, Esq.
MCGIVNEY, KLUGER, CLARK &
INTOCCIA, P.C
*Attorneys for Defendant*
**CELLCO PARTNERSHIP d/b/a VERIZON**
**WIRELESS** (*erroneously sued as "Verizon*
Communications, Inc.")
33 Whitehall Street, 16th Floor
New York, NY 10004
(212) 509-3456

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHASSIDY ADDISON                                    CASE NO.

       Plaintiff,

  vs.

VERIZON COMMUNICATIONS, INC.,
EQUIFAX INFORMATION SERVICES, LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., and TRANS UNION, LLC,

       Defendants.

---

**DEFENDANT EXPERIAN INFORMATION SOLUTION'S CONSENT TO REMOVAL**

      Without waiving any of its defenses or other rights, Defendant, Experian Information

Solutions, Inc., hereby acknowledges its consent to the removal of this action from the Supreme

Court of the State of New York, County of Bronx to the Southern District of New York.


Dated: 12/31/2024                              */s/ Jonathan P. Floyd*
                                               Jonathan P. Floyd, Esquire
                                               Troutman Pepper
                                               1001 Haxall Point, 15th Floor
                                               Richmond, VA 23219
                                               (804) 697-1435
                                               Jonathan.flyod@troutman.com

                                               *Counsel for Defendant, Experian*
                                               *Information Solutions, Inc.*